May it please the Court, Mason Morissette, Counsel for the Talalip Tribes. With me at counsel's table is Mr. Rob Smith from my office and also our representative of the Lummi Nation, Mr. Dan Rass, which filed a separate appeal from the District Court's decision, which is being viewed, as we understand, as a companion case to this particular proceeding. Sorry? Excuse me? I'm sorry, what's being viewed as what? Mr. Rass's appeal has a separate cause number, but according to the docket, it's being viewed as a related or companion case. Okay. And they were briefed roughly simultaneously. All right. This is a case involving the treaty rights of the Talalip Tribe and their desire to have the quiet enjoyment of those rights, as opposed to what are viewed as continued provocations and incursions by the Suquamish Tribe to add to their usual custom fishing places. Okay. Because it's customary to start first with jurisdiction, if I may, I'm quite puzzled about what happened with respect to jurisdiction in this case, because the District Court made no jurisdictional determination. It's not immediately obvious to me which of the six or seven bases for continuing jurisdiction exists here. And as I read your brief, you acknowledge that the Court didn't address jurisdictional argument. And you seem to say that to lay off established jurisdiction at the least based on the Court's continuing jurisdiction to hear such other matters as the Court may deem appropriate, which would be subparagraph G. Yet I should think that the Court should make that determination and explain why. And then your footnote also goes on to say Suquamish's usual and accustomed area was not adjudicated in final decision number one, which puzzles me no end since it seemed to me that the theory of your complaint was that its present fishing activities are outside the adjudicated UNA areas. So that's a kind of a long-winded way of trying to pose to you my difficulty with jurisdiction leading to the ultimate question of shouldn't we just simply remand this whole rascal to the District Court for the District Court to unravel whether it really has jurisdiction or not. Well, we certainly think that it did have jurisdiction, but you're quite right. The Court sidestepped that issue. And to the extent that it would be jurisdiction of this case to be included in some other provision of the paragraph 25 continuing jurisdiction order, we think that is clearly curable if that were necessary to do. This Court has heard, Your Honor, numerous cases similar to this brought under paragraph 25 to clarify usual and accustomed grounds and stations issues. And we see this case as nothing different from any of those cases. Well, we obviously also were a little picky about jurisdiction in, was it the Muckleshoot case? And we there certainly sent it back to the District Court to find jurisdiction on a different footing from the one you articulate. It seems to me it's all a little bit tied up with the merits here and that somebody ought to think through whether there really is jurisdiction under the decree. Well, our view is that there clearly is and has been in a number of cases that we have heard. And I think that's what we're trying to do here, is to make sure that we're making the early footnotes in our opening brief of the numerous times this Court, the District Court has dealt with, and then this Court has dealt with precisely the same kinds of issues. Okay. And the ultimate... See, I guess maybe it comes down to the fact that I don't exactly understand what your issue is. I mean, on the UNA, for the marine waters at Puget Sound from northern tip of Basin Island to the Fraser River, et cetera, is ambiguous. That's correct. And you want that clarified? Or are you saying, look, plainly under that definition, the Suquamish are now fishing in areas that aren't included? Well, on the merits, we're ultimately saying the latter because we think the evidence is clear. But as an opening to bringing up the issue, we are arguing that it's ambiguous. As the District Court has held in another case... Well, how is it ambiguous? The District Court held in the other sub-proceeding that will soon be here, it was briefed last month, that these broad phrases are almost by definition ambiguous. They refer to very large areas without reference to specificity given the numerous saltwater areas of Puget Sound. And that ruling was commensurate with the rulings of this Court in other cases. Was it ambiguous to the Tulalips when they made the same claim to the same body of water in 1975? And what do they mean when they made claim to all marine waters in Puget Sound? I mean, they must have meant something by it. The Tulalips, as did virtually every tribe, in their notice pleading, made broad claims. The Tulalips ultimately, on their own motion presented to the Court for a final decision, specific areas, which the Court noted was all that the Tulalips were claiming at the time. But you will find in the case originally, Your Honor, virtually every tribe made a simply broad claim, claiming Puget Sound, not the Pacific Ocean, or some other broad area. And in every case that this Court has seen, there's been this exact same pattern of broad areas originally claimed, and then the need, as in this case, for clarity, where there's no evidence to support a specific area that a tribe is attempting to get into. And in this case, this is supported by this Court's decision in 1990, and by the Suquamish's own actions for the past several decades, that they didn't have fishing rights in the areas we're talking about, and only lately have begun this probing to expand where they had historically fished and where everybody understood they fished. Would you help me for a moment? What distinguishes continuing jurisdiction under paragraph 25d from the meet and confer procedures required for all clarification claims? I'm not sure I understand, Your Honor. The paragraph 25 requires, as a precedent, to bringing a request for determination, which was the Court's way of providing for a beginning pleading, that the tribes engage in a meet and confer process first as a prerequisite. Well, the paragraph 25 requires that parties submit, quote, a statement that unsuccessful efforts have been made by the parties to resolve the matter as a prerequisite for invoking continuing jurisdiction. Is that right? Yes, and that was done in this case. All right. Now, this requirement is substantially similar to 25d, which grants jurisdiction for disputes concerning the subject matter of this case, which the parties have been unable to resolve among themselves. Adoption of 25d as an independent grounds for jurisdiction couldn't create a slippery slope where every dispute that meets the procedural requirements of paragraph 25 necessarily meets the jurisdictional requirements set forth in subparagraphs a to g. I'm not sure that I comprehend that well, Your Honor. The understanding that certainly has governed this case for literally several decades is that the Court retained jurisdiction to continue to hear a broad basis of disputes, and that the Court did not want those brought to the Court under the procedures established unless the meet and confer process had been followed. And the practice has been to follow that process in virtually every dispute over the last probably 20 years, something like that. I'm not sure there's... Well, so your answer is there is always jurisdiction? Well, if you fall within paragraph 25. Presumably, you couldn't bring a case that was about some peripheral matter that wasn't related to the treaty rights that were the subject of the original decision. It's not a case about everything. It's a case about treaty rights, treaty fishing rights. All right. Thank you. Mr. Morrissette, what remedy is it that you seek in this case? Aren't you coming here and saying this has already been adjudicated once and one of the parties is now in violation of the order of the Court and you're asking for seeking here is a reversal of the District Court's holdings, Your Honor, that the Tulalip's case was barred, either time barred, by laches or barred by res judicata. Neither of those doctrines apply. But what did you ask the District Court to do? Enjoin the other tribe? Ultimately, yes. That's what you were seeking there. And the Court did that, Your Honor, in this other case that will be coming in soon on facts that are substantially similar. And you're seeking the jurisdiction of this Court, an appeal of the denial of your sought injunction in the District Court. Is that how you're here jurisdictionally? It's a little... It really occurs before that step because the Court dismissed the case under Rule 12 saying you can't bring your case at all. It never got to whether the tribe was entitled to an injunction or to the merits of where Suquamish Usual and Custom fishing grounds were. It never reached there at all. It said laches and res judicata bar this action going forward. However, the District Court did it. He denied your injunction, in essence. Isn't that right? And so you're seeking this Court to reverse that denial of your injunction? Is that... We're seeking this Court to reverse his order dismissing the case, Your Honor. He dismissed the case. We cannot go forward. We cannot say why we want an injunction. We never got there. Well, that's kind of the ultimate denial of injunction, isn't it? So it is a denial of injunction, a potential request which we would get to. All right, thanks. We haven't addressed the two grounds that the District Court accepted from Suquamish as being the reason to dismiss this case, and those were laches and res judicata. How about just going directly to the District Court's view that... Let's just take the easiest one. That before the stipulated settlement was reached in 1983, Tulalip were in a direct head-on-head conflict with the Suquamish on overlapping fishing areas, and that this claim could and should have been brought at that time. The statement that they were in a direct overhead, direct head-to-head conflict, is it correct? Because? The Tulalips had not achieved a determination of their usual and custom grounds and stations. They came into the case late. They got a provisional order that was not final, and they sought in that sub-proceeding to determine their places. It wasn't a question of a head-to-head battle with other tribes over those tribes' places. It was where does Tulalip have a right to fish? They had presented no anthropological evidence. They presented no witnesses, no documents. They needed to establish, as every tribe had to in this case, where did they have a right to fish, and that was the subject matter. But these areas are not... Okay, if I understand it correctly, these areas can be overlapping, and then you get into the question of who has primary or superior rights in the area. Is that what this fight is about? No, no, that is not what this fight is about. Those are issues. You're exactly right, Your Honor, that those issues tend to overlap these issues. This fight is about where is Suquamish's usual and custom places. But that was determined. It's already been determined, and it was determined in 1975, and we've said it was determined then. You said two things. You said in numerous contexts that that kind of a determination is ambiguous and needs clarity, and you said in 1990 it doesn't include the east side of Puget Sound. So the 1990 decision of this court is... Whatever that means. Okay. But their area was determined. So now what you must be saying is that you disagree with that determination, or you just don't understand what the words marine waters of Puget Sound from the northern tip of Eshon Island to the Frayser River, including the Straits and the Hood Canal, means. That's correct, Your Honor. This case, as other cases... I said two opposite things. Which is correct? The latter thing is a lack of clarity. Okay. Lack of clarity. And what's unclear about it? We've briefed that it was determined. We say it does not include these areas. It's ambiguous, as the court has seen in other cases. It does not include the Saratoga Pass and the inlets and outlets of the Admiralty Bay and Useless Bay and the Rosario Straits and... East side of Puget Sound and enclosed waters, which include Possession Sound and Port Citizen. Okay. I just don't get it. I mean, that's why I wish somebody would just explain it to me. The pattern that has occurred before, and will probably occur again, is that there are broad, somewhat vague, ambiguous terms used in early rulings of the court... What's vague about it? What are the waters of Puget Sound? But it's got meets and bounds attached to it. Doesn't it? The phrase waters of Puget Sound... From the northern tip of a designated island to the Fraser River, including the Harrow and Rosario Straits, the streams draining into the western portion of Puget Sound and the Hood Canal. Right. Okay. I understand what that is. I mean, I can find each of those things on a map, and I can draw a line from point A to point B and figure that that's everything that was determined to be their usual and accustomed fishing area. Correct. And that does not include any of the waters I've mentioned, as have other determinations... I've been looking at another map, and it may. I mean, is that your claim? It's not your claim. This is no different than what the court has done in other cases where broad-based descriptions were found not to include specific areas, Your Honor. I'd like to reserve my one minute for rebuttal. Okay. Thank you, Mr. Morrissette. May it please the Court, my name is Michelle Hansen. I represent the Suquamish tribe, the Apelli. I hope I can explain it to you. Well, I do too, but you might also start with the jurisdiction. Mr. Morrissette was correct that before you get to anything in any lawsuit, you have to prove that you have jurisdiction. And in this case, it is a continuing jurisdiction because Judge Bolt, back when he put in his implementation order, said the decision is final except in these specific instances, like if there is a determination that Judge Bolt made that is ambiguous, then there's continuing jurisdiction because we want to clarify any ambiguity. An example of this would be when the Muckleshoot and the Lummi tribe had an issue about the Lummi determination. What does the word present environs of Seattle mean? They looked at the record. They didn't find it. And so the appellate court remanded it back and said, get some geologists or geographers to tell you what those words mean because there's nothing in the record. That's the type of ambiguity that Judge Bolt and the courts subsequent to him have seen as the reason to have continuing jurisdiction. Now, I think it's important here that the jurisdictional basis has to do with whether or not there has been a previous determination of this court. And I think that you said that earlier. In this case, Judge Bolt, on April 18, 1975, issued a determination of what Suquamish's UNA is. And it's exactly what you had said. I'm not going to repeat that. And also, there is a 1990 case where Suquamish was trying to get into the fresh waters. It already had marine water UNA. It was trying to get into the fresh waters of Lake Mash and the freshwater rivers. And there, the district court as well and the appellate court affirmed that Suquamish did not have freshwater UNA as a result of being a successor to the Suquamish tribe. So those are the two decisions that apply here in the race judicata context. There's also another part which, again, is, as you said, Tulalip in 1983 was trying to expand its own UNA to... Well, its UNA has never been actually determined, right? I mean, it was provisionally determined by Bolt. And then in 1983, and by virtue of the settlement, plus Craig's findings in, what, 1985, give it some areas. In 1975, there was a UNA determination that is very close to the areas that are the case areas. In other words, it was a very limited UNA. And Judge Bolt recognized that there may be other evidence and there may be reasons why a tribe needs to come back in with more evidence to say, our UNA is really bigger than that. And that's another continuing jurisdiction basis to come back into court. But in Tulalip's case, what exactly happened was in 1983, they wanted to expand substantially their marine UNA. They wanted to go up to the Fraser River. They wanted to go south. And what they did instead of going to trial, well, actually, they eventually went to trial with Lummi because Lummi never settled. But as you said, with the other tribes, with the Nisqually tribe, with the Puyallup tribe, I think with the Swinomish and with Suquamish and Muckleshoot, they entered into agreements recognizing we're not proving and we're not having to prove, but for consideration, we're going to make some agreements as to where we can fish. And if you look at what we call the MST agreement, the Muckleshoot-Suquamish-Tulalip agreement, there are discussions about production areas that include the areas that are part of this 2005 request. They talk about primary rights for Suquamish in certain areas. They talk about how Tulalip and Stillaguamish will have the production, in other words, the responsibility in the production area of Port Gardner and Port Susan. So there's this whole discussion about how we're going to manage the overlapping UNAs, understanding, and I think Judge Craig saying, you know you haven't asked Tulalip to prove the UNA. And everybody was okay with that. So we're making an overlapping fisheries and an understanding that we're going to go towards a comprehensive management plan with all the tribes. In the meantime, Tulalip says, we promise to uphold your current fishing UNA in Central Puget Sound. That's right in the agreement. And so then Tulalip and Lummi actually go to trial. And there is, I've got the citation for the record that shows that Mr. Morissette himself brings Dr. Lane and is trying to get her to do some direct testimony on behalf of the Tulalip. And the Lummi attorney, Mr. Rass, who's also here, objected and said, what's going on? You know, Dr. Lane is talking about Suquamish UNA. And it doesn't matter what the testimony is about. But Tulalip right then and there says, your honor, and he's looking at a map, says, look at it. Suquamish has UNA, and describing again that northern tip from Vashon up to Fraser, has the whole world that's this map. And it is not specific. And it was contested. And we have the right to use their evidence by analogy to try and prove our own vast UNA. Now, ultimately, it didn't happen that way. As you said, Judge Craig issued a different UNA determination. So that's going on. We have it at a point in 1983, both through the settlement agreement that became a judgment, a court approved settlement, and through the Tulalip's in its own trial, a month later, that they understood that Suquamish had this broad, unspecified UNA. What changed between then and now? According to the 19 or 2005 request, there was a 1990 decision by this court that said Suquamish is not entitled to be on the east side of Puget Sound. And they, Tulalip, asked the court to clarify, what does that mean? Because they interpreted that to mean that they couldn't go anywhere, marine water, fresh water on the east side of Puget Sound. And that's not, well, and that's where the district court said, latches applies. You had 15 years to bring that question of clarifying whether or not the 1990 decision of this court meant what they thought it meant. And he said 15 years is too long of a delay. The Suquamish, as you can presume that that delay, it will prejudice Suquamish because Suquamish had been fishing on the east side. And it's only in 2003 when it started opening fisheries a little bit too close to Tulalip's reservation that all of a sudden it became an issue. And all of a sudden Tulalip is saying, we don't think you have UNA here. And changing their view from what they had as their view in 1983. Now, I will say that the Suquamish opened up fisheries in this area every year. It's a pre-season regulation that for the year such and such, we will be opening up fisheries. But we didn't actually fish there. And that has to do with another situation of the court understanding that Suquamish had been intimidated into not actually fishing, even though we were opening the regulations. Yeah. Your chronology and your explanation is helpful. But here's part of the problem I've got procedurally here. You have a district court, A, not making a determination on jurisdiction, and B, giving a couple of paragraph ruling on a 12B6 on race judicata. And, you know, I really have tried to figure it out. And sort of have to say I can't. The district court didn't really spell it out. And the record isn't developed. So, you know, I guess I'm wondering why we shouldn't simply send it back saying, look, we can't figure out jurisdiction because it's connected to the merits in effect. If they're asking, it's perfectly clear that if the Tlalip are asking for the determination to be modified or changed or altered in any respect, there is no jurisdiction. That's correct. Whereas there is jurisdiction if they're just simply saying there's ambiguity. So somebody's got to decide what it is that they're actually doing. And honestly, I can't. I mean, I don't think that's my job either. Your Honor? And that same thing applies to the race judicata determination. We're on 12B6 without a developed record. So whereas you may be absolutely right or not, it's very tough to say. I think that there is continuing jurisdiction if you prove one of the seven. And that is something I think in these intertribal disputes we've been struggling with, which is, don't you have to first not just allege that there's an ambiguity, for instance, but to prove what the ambiguity is or where the ambiguity is or the need for clarification. And in this case, you know, simply saying there was this 1990 decision and now we don't understand it. I think that that, again, that's the latches argument. You should have brought that 15 years ago or at least not 15 years later. And the race judicata has to do with exactly what you said. There is a determination and it's final. And you don't get to open up the issue again of where Suquamish can fish. And I think it's important to note that Judge Bolt said that there's no requirement that Suquamish continue to fish in an area to keep its treaty rights. The treaty rights are established as of 1855. Where were you fishing in 1855? And it doesn't matter whether or not we fished in a particular area, the case area, the 2005 request, since then, because we still have that right. Now... Well, some of the disputed waters are within the Tulalip's UNA. All of it is. All of it is. It's an overlapping UNA. Totally overlapping, which is fine. Yes. So should their lawsuit or is their lawsuit properly characterized as one over primary and secondary rights? They have not raised that issue of primary rights. They haven't raised it, but would that be what they should be arguing to say in court? Is that according to your view? I think the district court was correct when it said, if you think Suquamish is not fishing where it should, now, because you have a settlement agreement, you need to bring the suit under the as a question under the... Is that form over substance or is it real substance? It's real substance because if you don't go there, then all of the agreements that have been court approved between 1974 and now, they're really meaningless. And so you have to give some meaning to the fact that Suquamish and Tulalip, for consideration, came to an agreement without Tulalip having to prove their UNA there. And at that time, Suquamish believed we already understood what Suquamish's UNA was and that it included all of the marine waters of Puget Sound. That includes those marine waters that butt up against the mainland on the east side of Whidbey Island. Let me ask a different question as to... I'm struggling with this as Judge Rimer is. How is the 1975 determination of Suquamish's UNA claim preclusive of Tulalip and Suquamish? If Tulalip and Suquamish, they were plaintiff intervenors and any cross-claim would have been permissive rather than compulsory. I mean, Suquamish never acknowledges why a claim that would have only been permissive in the initial action could be precluded in a later action. The Suquamish is really looking at the 1983 settlement, okay? And we're looking at the admissions by Tulalip as to what Suquamish's UNA was in 1983, because it's obvious it was their trial strategy to try and get the same thing. So the issue of whether or not in 1975 those claims were permissive or required has some history afterwards that lock it in. It isn't just what happened in 1975 in terms of whether or not Tulalip should have brought the claim in 1975. But definitely by 1983 when we were talking about the overlapping UNAs, that's when they could have said, for instance, we have primary rights in Port Gardner and Port Susan, or they could have said, we don't think you have UNA here and we're not going to sit here and talk about how we're going to manage this area at that time. That's when the other thing, and it's all context too, there was original 11 tribes that went with the USB Washington. That's decision number one. And then a number of tribes, including Tulalip, Lummi, Swinomish, and Muckleshoot, and Suquamish came in as intervenors, and they were in the process of getting their UNAs determined when the 1975 spring herring fishery came up. And it became an issue because these tribes wanted to fish in that herring fishery. And so the hearings related to the UNA, in other words, you had to have UNA before you could go fishing. So they all got put together. Now it was contested. The state was heavily contesting, especially Suquamish's UNA because it was so large. But in the end, nobody appealed the decision of Judge Bolt. And that's why it's final then. And that's why it can't, the question of this ambiguity is a fundamental question that has to be answered by every tribe who comes in now and tries to say, I'm confused whenever Suquamish opens up a new fishery in a place that it hasn't opened a fishery in the past, say, 20 years. That's the part that's hard. Now the 1983 settlement also had a lot of language disclaiming the fact that it was really binding. I disagree, Your Honor. Okay, I'm sure you do. But it did basically say, you know, this is all, this is just here and we realize that there are people, other people can come in and so forth and so on. So if, but given that sort of equivocal language, how could it be raised judicata? Okay. The fact of the matter is the 1983 agreement that's between Suquamish, Muckleshoot, and Tulalip is binding as to those three tribes. And it is a closed circuit. The party expected a comprehensive plan to be developed for the whole central Puget Sound area. And that they said, if that plan comes into place, we will move to that plan. If that plan gets, you know, found illegal or parts of it go away, we'll circle back to the MST agreement. And that's where we go. They, the Tulalips cannot get out of that agreement. The question is whether or not you could bind the Lummi, for instance, who didn't sign that agreement or anybody else whose names, the tribes that are, the names are mentioned there as far as production areas and such. And the answer of the court was, no, you aren't, you, Lummi will not be bind. And in fact, you can go to trial and they did go to trial on the issue of where Tulalip's UNA was. So as to Suquamish and Tulalip, I think that 1983 agreement is quite binding. But yet we have, Suquamish filed an action involving Tulalip in 1985. You say that has nothing to do with it? I'm trying to remember which, 1985, I think. They filed a request for determination that Suquamish was a successor in interest to the Duwamish, which was opposed by Tulalip and three other tribes. And then this 19, as I understand it, the 1985 action prompted this court's 1990 ruling. Suquamish were not entitled to exercise fishing rights on the east side of Puget Sound. Now it seems to me if the 1983 settlement had reclusive effect over claims involving Suquamish's UNA, Suquamish should not have been, should not have initiated the 1985 request for determination. If you recall, Judge Bolt said, you can come and ask for an enlargement of your usual and custom fishing grounds if you can prove it. The 1975 determination for Suquamish is the marine waters, in other words, the salt water of Puget Sound. In the 1985 case, Suquamish was trying to expand into the fresh waters of Lake Washington, Lake Sammamish, Lake Union, and the tributaries and the rivers there. And Tulalip and some other tribes opposed that. So two different issues. And I think that's where when in 1990 the appellate court here says the case area is the fresh water, but then they start talking about east side of Puget Sound, west side, that's where perhaps there was some confusion or it led Tulalip to come to this conclusion that the interpret, its interpretation of the 1990 agreement is you can't fish on the east side of Puget Sound anymore. But that case only stands for fresh water. It had nothing to do with the marine water UNA and the district court said that. Thank you. You're welcome. Thank you very much. And I hope that, I'm sorry, I was going to say Suquamish does request that you affirm the district court's dismissal of the case. Thank you. Okay, thank you. I'm saying to Ms. Worseth. Can you please record just a brief comment that I cannot agree with counsel's history of what went on here. There's a lot of come out that are her opinions and her view of history. But we do want to be clear that in 1990 when we and the Lummies and other tribes objected to the Suquamish request, that was a request for fishing on the east side of Puget Sound. And this court said the district court found that the west side of Puget Sound. And the court said that Suquamish filed this action to determine their usual and custom fishing places on the eastern side of the sound. At the time of the treaty of Point Elliott, they did not fish in those areas. Then went on to make its ruling that they were not successors to the Duwamish. How in the world that is supposed to have triggered action by the Tulalips or anyone else to do something is beyond me. And that was one of the basis that the district court found that this action should be barred. And it just is not there that ruling was favorable to the Tulalips, to the Lummies, to the other tribes that challenged the Suquamish attempts to move east. Mr. Worseth, thank you. Thank you, counsel, both of you for your argument. It's helpful. And the matter just argued will be submitted.
judges: Nelson, Rymer, Beam